IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA

v.                                                        No. 2:20-CR-00009

PHEATHINE QUINN

UNITED STATES' MOTION IN LIMINE

The United States of America, by counsel, moves the Court to direct the defendant and the defendant's attorney not to mention, refer to, interrogate concerning, or bring to the attention of the jury in any matter, directly or indirectly, any of the following matters without first approaching the bench and obtaining a ruling on their admissibility, for the reason that the mere mention of such matters would be error and would harm or prejudice the right of the government to a fair trial, and the harm and prejudice created thereby could not be cured by an instruction to disregard:

1.  Any evidence intended to prove affirmative defenses such as justification, necessity or self-defense.

2.  Any reference or argument to witnesses not called by the government, absent a previous showing that the defense was precluded from obtaining the presence of said witness by defense subpoena.

3.  Any evidence or argument regarding the Government's or its agents' decisions regarding referral for prosecution and the decision to charge the offenses at issue in this case.

4.  Any attempt to elicit testimony regarding any self-serving hearsay statements which the Defendant may have made to law enforcement or to other third parties.

1

5.  Any reference to the punishment, including collateral consequences, which may be imposed on the defendant.

6.  Any evidence or argument designed to convince the jury to acquit, not because the government failed to prove the charged crimes, but rather because a guilty verdict would be contrary to one's sense of justice, morality, or fairness.

7.  Any attempt to elicit testimony from witnesses that exceeds the scope of permissible testimony pursuant to *Touhy*.

8.  Any attempt to impeach government witnesses' truthfulness with extrinsic evidence of prior acts or policy violations.

9.  Any attempt to impeach government witnesses' character by referencing lawful activities related to martial arts training and participation in martial arts competitions.[1]

<u>ARGUMENT</u>

1.  <u>Justification Defense</u>

The standard applied when determining whether a justification defense is warranted is well established. "[T]o warranted a justification instruction, the defendant must produce evidence that he: (1) was under unlawful and present threat of death or serious bodily injury; (2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) had no reasonable legal alternative (to both the criminal conduct act and the avoidance of the threatened harm); and (4) a direct causal relationship between the criminal

---

[1] The Government recognizes many of these arguments are based on basic tenants of law and precedent. However, due to recent incidences at trial with Federal Public Defender's office's representatives, the Government believes it is appropriate to address these issues in a Motion of Limine in order to preempt any attempt to introduce of inadmissible evidence.

2

action and the avoidance of the threatened harm." <u>U.S. v. Crittendon</u> 883 F.2d 326, 330 (4th Cir. 1989).

"A trial court can refuse to instruct the jury on an affirmative defense if the defendant fails to produce sufficient evidence as a matter of law as to any one of these elements." <u>U.S. v. Hicks</u>, 203 F.3d 823 *1 (4th Cir. 2000)(Table)(citing <u>U.S. v. Sarno</u>, 24 F.3d 618, 621 (4th Cir. 1994)).   The Court construes the justification defense "very narrowly." <u>United States v. Perrin</u>, 45 F.3d 869, 871 (4th Cir. 1995).

In the case at hand, there is no evidence the defendant was under any imminent threat of death or bodily injury when he possessed the weapon or when he assaulted the victim.  In fact, the evidence will show the defendant approached the victim and asked to speak with him, willingly entered the staff Unit Team office hallway, and then pulled a weapon and attacked the victim in the hallway.  Any argument by the defendant that the weapon was necessary due to violence at the prison will be insufficient to show he was under imminent threat of death or bodily injury.  Likewise, there is no evidence that the victim was the aggressor or that the defendant was acting in self-defense.

District courts may exclude evidence regarding such a defense if the defendant cannot meet the threshold burden regarding any element of the defense. <u>See United States v. Sarno</u>, 24 F.3d 618, 620-621 (4th Cir. 1994)(upholding trial court order precluding presentation of evidence of duress defense to jury where, as a matter of law, the defendant could not satisfy an element of the defense); <u>see also</u>, <u>United States v. Vasquez-Landaver</u>, 527 F.3d 798, 804-805 (9th Cir. 2008)(granting motion in limine and excluding evidence regarding duress because defendant could not make a prima facie showing); <u>United States v. Portillo-Vega</u>, 478 F.3d 1194,

1196-1202 (10th Cir. 2007) (same).  Furthermore, the Supreme Court has stated unequivocally

that:

> [t]he requirement of a threshold showing on the part of those who assert
> an affirmative defense to a crime is by no means a derogation of the
> importance of the jury as a judge of credibility. On the contrary, it is a
> testament to the importance of trial by jury and the need to husband the
> resources necessary for that process by limiting evidence in a trial to that
> directed at the elements of the crime or at affirmative defenses. *If, as we
> here hold, an affirmative defense consists of several elements and
> testimony supporting one element is insufficient to sustain it even if
> believed, the trial court and jury need not be burdened with testimony
> supporting other elements of the defense.*

United States v. Bailey, 444 U.S. 394, 416 (1979) (emphasis added).

The defendant cannot meet the requirements for affirmative defenses such as

justification, necessity, and self-defense.  For these reasons, the government moves that he be

barred from presenting such a defense at trial.  The government contends the mere mention of

such matters without first demonstrating the threshold burden can be met, would be error and

would harm or prejudice the right of the government to a fair trial, and the harm and prejudice

created thereby could not completely be cured by an instruction to disregard.

2.  <u>Witnesses Not Called</u>

The Government is not required to call all or any specific witness who may have

knowledge of an incident.  As such, the defense should not be permitted to mention any person

as a missing witness absent a showing the witness was accessible only to the Government.  <u>See</u>

<u>United States v. Crawford</u>, 317 F. App'x 303, 306 (4th Cir. 2008).

Should defense counsel raise the issue of missing witnesses, the Government asserts

it may respond to such arguments by informing the jury during closing argument that the defense

had equal subpoena power and failed to do so.  Courts have held that such invited responses are

permissible as they do not shift the burden of proof but are a proper response to such arguments by defense.  See e.g., United States v. Palmer, 37 F.3d 1080 (5th Cir. 1994).

    3.  Reference to Decision to Refer and Prosecute

Argument or evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus excluded from trial. See, e.g., United States v. Johnson, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); United States v. Berrigan, 482 F.2d 171, 174-76 (3d Cir. 1973) (affirming exclusion of evidence relating to "discriminatory prosecution").

The decision to prosecute a case in the Western District of Virginia is made by the United States' Attorney's Office in that district, not the Bureau of Prisons.  While counsel for the Government in this case is a Special Assistant United States Attorney employed by the Bureau of Prisons, when acting in her role as a Special Assistant United States Attorney, she represents the United States and is not an agent acting on behalf of the Bureau of Prisons.

Any challenge to the motive for prosecution is a challenge to the motive of Government counsel alone, not the agents, since they did not ultimately make the decision to file the charges against defendant.  At trial, Government counsel cannot act as her own witness to defend her decision to charge the defendant with a crime.  Should the defendant be permitted to argue or imply the Government had some ulterior motive in filing charges, the Government would have no way to respond.  As such, the proper way to challenge the Government's motive for filing is through pretrial motions, not before the jury.

As the Government's motive for filing charges is not properly brought before a jury, the subjective intentions or motivations of a government agent are also irrelevant to determining the factual guilt or innocence of a defendant. See, e.g., United States v. Goulding, 26 F.3d 656,

667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); see also, United States v. Yagman, No. CR 06-227(A)-SVW, 2007 WL 9724391, at *2 (C.D. Cal. May 16, 2007) (collecting cases).

In this case, any subjective intentions or motivations of government agents in referring this case for prosecution are not relevant to whether the defendant committed the offense as charged.  Therefore, any argument or questioning regarding an agent's reasoning for referring this case is irrelevant and would be unfairly prejudicial to the Government's case.

4. <u>Self-Serving Hearsay Statements</u>

"Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements." <u>Williamson v. United States</u>, 512 U.S. 594, 600 (1994). Statements "collateral to a self-inculpatory statement" should not "be treated any differently from other hearsay statements that are generally excluded." <u>Id</u>. Thus, Rule 801(d)(2) "does not extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses." <u>United States v. McDaniel</u>, 398 F.3d 540, 545 (6th Cir. 2005) (citing <u>United States v. Wilkerson</u>, 84 F.3d 692, 696 (4th Cir. 1996)).

"Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." <u>Id</u>. (citing <u>United States v. Ortega</u>, 203 F.3d 675, 682 (9th Cir. 2000)).

The defendant has indicated he intends to subpoena a BOP staff member, D. Gilmer. In his memorandum, which has been disclosed to the defendant in discovery, D. Gilmer

indicated the defendant made a statement that, "I did what they told me to do.  I did what I was supposed to do." The defendant cannot introduce this statement through the testimony of D. Gilmer.  Rather, if the defendant wishes to introduce evidence of his statement, he must do so through his own testimony and be subject to cross examination by the Government.  A similar analysis applies to any statements made by the defendant in relation to the incident at issue. Accordingly, any such testimony should not be permitted in this case.

   5.  Reference to Punishment

   Parties may not argue potential punishment to the jury.  See United States v. Tisdale, 7 F.3d 228 (4th Cir. 1993). In the federal system, punishment is the exclusive province of the court, not the jury, whose sole function is the determination of guilt or innocence. See United States v. Del Toro, 426 F.2d 181, 184 (5th Cir.) cert. denied, 400 U.S. 829 (1970).  Improper statements include inviting the jury to consider the possible punishment for offenses by making statements such as, "this is a man's life."  Not only does this and similar statements grossly exaggerate the potential punishment in the cases involved, but it impermissibly invites the Jury to consider the potential punishment should the defendant be convicted.  Such statements are prejudicial and improper.

   6.  Jury Nullification

       It is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the Government has met its burden of proof. See United States v. Scarmazzo, 554 F. Supp. 2d 1102, 1108 (E.D. Cal. 2008); see also United States v. Blixt, 548 F.3d 882, 890 (9th Cir. 2008); United States v. Perez, 86 F.3d 735, 736 (7th Cir. 1996); United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997) ("jurors have no right to nullify").  "A trial

judge... may block defense attorneys' attempts to serenade a jury with the siren song of nullification." United States v. Thompson, 253 F.3d 700, 700 (5th Cir. 2001) (unpublished).

Specific examples of arguments that may elicit jury nullification include arguments that appeal to sympathy such as statements regarding challenges of prison life and that the jury should consider what it would be like to live under such conditions. Not only are such arguments irrelevant to the fact of the defendant's guilt or innocence, it improperly invites the jury to acquit based on sympathy or emotional considerations.

   7.   Testimony From Witness that Exceed the Scope of Permissible Evidence Pursuant to *Touhy*

In United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), the Supreme Court upheld "a refusal by a subordinate of the Department of Justice to" testify in response to a subpoena "on the ground that the subordinate [was] prohibited from making such submission by his superior through" Department of Justice regulations. Id. at 467. Since *Touhy*, the Department of Justice has routinely "promulgate[d] so-called Touhy regulations to govern the conditions and procedures by which [its] employees may testify about work-related issues at trial." United States v. Soriano-Jarquin, 492 F.3d 495, 504 (4th Cir. 2007). Pursuant to these regulations, an applicant makes a formal request for testimony or for the production of documents and the Department of Justice provides a response. The regulations do not "purport to grant any right of access to applicants ... and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States." Smith v. Cromer, 159 F.3d 875, 880 (4th Cir. 1998).

The defendant has sought to subpoena several Department of Justice employees as witnesses in this case. In so doing, the defendant has submitted that it expects to elicit the following testimony from each subpoenaed witness:

D. Gilmer: "Senior Officer D. Gilmer responded to the scene and would be called to testify regarding what he witnessed upon arriving on the scene and about his written report."

R. Reece: "SIS Tech Richard Reece will be called to testify regarding what he saw when he photographed the scene."

J. Canfield: "(1) USP Lee has over 150 cameras; (2) only SIS staff have access to the video surveillance footage; (3) when an incident occurs, an SIS agent immediately reviews the camera footage to see what happened; (3) an agent can record the incident onto a disc if warranted; and (4) recording the footage onto a disc is warranted if an inmate commits an act that will be prosecuted."

Pursuant to Department of Justice <u>Touhy</u> regulations, any attempt to question these witnesses on issues outside of the scope of the limited permission sought by the defendant and granted by the Department of Justice would be a violation of these regulations.

8.  <u>Impeachment of Government Witnesses with Extrinsic Evidence</u>

Except for evidence of conviction of a crime, as provided in Fed.R.Evid. 609, extrinsic evidence of specific instances of conduct may not be used to impeach a witness' credibility. Fed.R.Evid. 608(b); <u>United States v. Bynum</u>, 3 F.3d 769, 772 (4th Cir.1993), cert. denied, 510 U.S. 1132 (1994). The reason for the rule is to avoid holding a series of mini-trials on witness credibility within the trial itself. <u>Bynum</u>, 3 F.3d at 772.

The defendant has indicated in correspondence related to his above listed <u>Touhy</u> requests he intends to impeach SIA Canfield in relation to BOP policy by introducing testimony of other witnesses to testify about the same. This would result in exactly the sort of mini-trial sought to be avoided in <u>Bynum</u>.

Because there is no evidence that SIA Canfield failed to follow any policy or was untruthful regarding the issues relating to video evidence in this case, such a line of inquiry

9

would be akin to permitting the defendant to question SIA Canfield regarding an unsustained complaint of misconduct.

In <u>United States v. Harris</u>, 551 Fed.Appx. 699 (2014), the Court did not permit impeachment of a law enforcement witness regarding unsustained disciplinary allegations and other mere allegations of misconduct.   <u>See id</u>. at 702.   The Appellate court found that, "[a]lthough some of the unsustained accusations in the records might have related to untruthfulness, the court did not consider them probative of the officers' credibility, and it expressed concern that admitting them would "sidetrack[ ]" the trial with a "mini-trial" on their veracity." <u>See id</u>. at 703.

The court further stated, "mere accusations of prior misconduct inherently have little probative value. They are, after all, "both unproven and unconnected to th[e] [instant] case."  As such, they naturally pose a risk of misleading the jury, given "the danger ... that a jury will infer more from the previous investigation than is fairly inferable."   <u>See id</u>. (internal citations omitted).

Additionally, a mere allegation, without evidence in support, is not sufficient for the defendant to be entitled to impeach a Government witness regarding BOP policy.  In <u>United States v. Monell</u>, No. CR 12-10187-FDS, 2013 WL 12437912, at *5 (D. Mass. Feb. 12, 2013), a defendant filed a pre-trial motion to compel "production of '[t]he manual and/or written policies, procedures, and regulations of the Fall River Police Department concerning ... [among other things, the] use of confidential informants." <u>Id</u>. "Defendant argue[d] that the policies [we]re relevant to his entitlement to a Franks hearing." <u>Id</u>. The court disagreed, reasoning that "noncompliance with a departmental policy would not necessarily support a showing that the affiant made a false statement knowing and intentionally, or with reckless disregard for the

truth." Id. While the issue in Monell related to discovery of the policies and procedures of the police department, the analysis, namely that noncompliance with a policy is not relevant to truthfulness absent a further showing by the defendant, is similar to the analysis in this case.

In United States v. Burton, 81 F. Supp. 3d 1229, 1255–56 (D.N.M. 2015), a defendant filed a motion to compel disclosure of FBI policies related to confidential informants, among other materials. The court denied the request, reasoning that "[a]lthough [the defendant] contends that [the FBI agent] may have violated the FBI's recording and reporting policies for CIs and targets, he has offered no evidence to support his contentions." Id. "This speculation—mere hopeful wishing—is an insufficient basis for the court to compel discovery in a criminal case." Id. If mere speculation that a policy was not complied with is insufficient to even permit discovery into the matter, so, too, must inquiry and attempted impeachment before a jury be impermissible where there is no evidence that any policy violation that may have occurred was willful or would otherwise reflect on the truthfulness or bias of the government witness.[2]

Accordingly, exclusion of accusations of prior misconduct and policy violations lay within the district court's "wide latitude ... to impose reasonable limits on ... cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues ... or interrogation that is ... only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

9. Impeachment of Witness Through Reference to Lawful Participation in Martial Arts Training and Competition

---

[2] The Government expects the defendant to argue the Government caused video footage from before the incident took place to be deleted willfully and that it would have potentially shown the defendant acting in a way not concordant with the subsequent assault that occurred. There was originally video of the unit from prior to the assault. However, the evidence demonstrates video of the unit prior to the alleged assault was inadvertently lost due to a changeover in the video surveillance system. There is no evidence of a willful violation of policy. Further, the video that was lost would not have shown the assault as the assault took place in the Unit Team hallway where no video surveillance was present.

One or more prospective Government witnesses, including the victim in this case, participate or have participated in the past in martial arts training and competitions. Lawful participation in martial arts training and competitions is not relevant to any individual's character or reputation, and such participation cannot provide a reasonable basis for the defendant to be in fear for his safety even if the defendant was aware at the time of the assault that the witnesses participated in such lawful activities. As such, any reference to a Government witness' lawful participation in such activities is irrelevant, prejudicial, and would only serve to confuse the jury in this case.

Conclusion

For the foregoing reasons, the United States requests the defense be precluded from eliciting testimony, proffering argument, or otherwise introducing at trial any reference to the matters stated above.

Respectfully submitted this day,

CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY


/s/ Christine M. Hummert
MO Bar No. 67589
Attorney for United States of America
U.S. Attorney's Office
180 West Main Street
Abingdon, Virginia 24210
276-628-4161
276-628-7399 (fax)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Counsel for the defendant.

/s/Christine Hummert
Special Assistant U.S. Attorney
180 West Main Street, Suite B19
Abingdon, Virginia 24210
chummert@bop.gov