IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | Case No. 2:20CR00009 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **PHEATHINE QUINN,** ) | JUDGE JAMES P. JONES |
| ) | |
| ) | |
| Defendant. ) | |

*Christine M. Hummert*, Special Assistant United States Attorney, Abingdon, Virginia, for United States; *Monica D. Cliatt* and *Benjamin M. Schiffelbein*, Assistant Federal Public Defenders, Roanoke, Virginia, for Defendant.

In this criminal case, the defendant has filed a motion to dismiss the Indictment based on the government's failure to preserve potentially exculpatory video evidence, in violation of the Due Process Clause of the Fifth Amendment. Because I find that the government did not act in bad faith, I will deny the defendant's motion.

I.

A. BACKGROUND.

The defendant, Pheathine Quinn, is charged in a five-count Indictment with assault with intent to commit murder, in violation of 18 U.S.C. § 113(a)(1) (Count 1), assault with a dangerous weapon with intent to commit bodily harm, in violation of 18 U.S.C. § 113(a)(3) (Count 2), assault resulting in serious bodily injury, in

violation of 18 U.S.C. § 113(a)(6) (Count 3), forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a prison guard while the guard was engaged in official duties, in violation of 18 U.S.C. §§ 111(a)(1), (b) (Count 4), and possession of a prohibited object, a weapon, in violation of 18 U.S.C. § 1791(a)(2), (d)(1)(B) (Count 5).  The defendant has filed a motion to dismiss the Indictment, alleging a due process violation based on the government's failure to preserve certain video evidence that he alleges had potentially exculpatory value.  Specifically, the defendant argues that the government acted in bad faith by failing to take all possible steps to preserve the evidence.

Under the due process clause, the Supreme Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "[T]o the extent the Constitution imposes a duty upon the government to preserve evidence, 'that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.'"  *United States v. Matthews*, 373 F. App'x 386, 390 (4th Cir. 2010) (unpublished) (quoting *Trombetta*, 467 U.S. at 488–89).  In determining whether due process has been denied, the Court has drawn distinctions between exculpatory and potentially exculpatory evidence.  Due process is violated if the evidence has "'exculpatory value that was apparent . . . before the evidence was destroyed,'" and

is "'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id.* at 390.

If the evidence is only "'potentially exculpatory,'" or "potentially useful," however, there is no denial of due process unless the defendant can establish that the government acted in bad faith in destroying the evidence. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). Bad faith "must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56–57. But "[m]ere negligence on the government's part in failing to preserve such evidence is inadequate for a showing of bad faith." *Matthews*, 373 F. App'x at 390 (citation omitted). "As negligence is insufficient for bad faith, it would follow that mere, non-negligent inadvertence would also not constitute bad faith." *United States v. Thompson*, 584 F. App'x 101, 104 (4th Cir. 2014) (unpublished).

B. FINDINGS OF FACT.

An evidentiary hearing on the motion was held on November 22, 2021. The sole witness was Special Investigation Services (SIS) Agent Jamie Canfield (Agent Canfield), who is employed at the United States Penitentiary Lee (USP Lee), located in this judicial district. The following are my findings of fact as to the Motion to Dismiss the Indictment. I have considered the rationality and internal consistency

of his testimony, the extent of detail and coherent nature of the testimony and the manner of testifying by the witness.

1. It is alleged that on October 1, 2019, at USP Lee, the defendant, an inmate, physically assaulted a prison staff member, Brandon Carlton, with a homemade shank, causing multiple wounds. At the time, the defendant was housed in the "K" unit of the prison. There are almost 200 video cameras located through USP Lee, including in the common areas of every housing unit. There are no cameras in the "staff alley," which is the cross-over space that is located adjacent to the common area in between the different housing units.

2. The cameras located in the K-housing unit were positioned with the broad view of the common area. At approximately 1:00 p.m., inmates in K-housing unit were secured in their cells due to other inmates being found in possession of narcotics. During that time, it is alleged, the defendant was kicking on his cell door, and staff went to speak with him. About five minutes later, all the inmates were released into the common areas. After leaving his cell, the defendant immediately went to speak with Carlton; they went into the staff alley, at which point the defendant allegedly assaulted Carlton. The assault itself was not captured on video, as there are no cameras in the staff alley. The cameras only captured video of the events leading up to the assault.

3. A few days after the assault, Canfield and other prison officials reviewed the video of the K-housing unit during the time period just prior to the assault. Canfield ordered that the recording be downloaded to the video recording system's hard drive. He believed that the footage might be relevant in a future prosecution. He did not do a "screen grab" of the recording. A "screen grab" is a digital recording of a computer screen video; it is a separate way to preserve video footage.[1]

4. In May 2019, officials became aware of issues with the prison's video recording system. In September 2019, the government awarded a contract to update the system, including replacement of its outdated hard drives. In February 2020, during the changeover to the new system, all remaining video footage downloaded to the hard drives was transferred to a single hard drive; the rest were "wiped," that is, erasing the data and making it irrecoverable.[2] The preserved hard drive was stored in SIS's evidence room.

5. At some point after the transfer, Agent Canfield attempted to review video evidence saved to that hard drive, but he discovered that it was gone. The video footage was likely saved to another hard drive, which was inadvertently wiped

---

[1] Also known as "screenshot" or "screen capture." Wikipedia, *Screenshot*, https://en.wikipedia.org/wiki/Screenshot (last visited Dec. 2, 2021).

[2] The process is described in Wikipedia, *Data erasure*, https://en.Wikipedia.org/wiki/Data_erasure (last visited Dec. 2, 2021).

by the prison's computer services following the switchover. As a result, all of the footage from October to December 2019 was lost, including the footage from the K-housing unit on October 1, 2019.

### III.

Based upon these facts, and crediting Canfield's testimony, I find that the defendant's due process rights were not violated by the government's destruction of the video evidence. There is nothing before me to suggest that when the video tape evidence was destroyed, it was apparently exculpatory to prison officials. It did not show the assault itself. Nor does it appear that the video would disprove the recollection of Canfield and several other prison officials who viewed the video prior to its destruction. In any event, there is no evidence that the lost video is central to the case. Canfield requested that the footage be saved to the hard drive because he thought it was relevant, or that it might be useful in the prosecution of the case, but not because it contained exculpatory evidence that was apparent to him. In fact, while he could have taken a screen grab of the footage, he did not do so, which further indicates that, if anything, he viewed the footage to be only marginally relevant.

Under *Trombetta* and *Youngblood*, the destruction of potentially useful evidence violates due process only if the government acted in bad faith. Here, I do not find that the government acted in bad faith. There is no evidence that the footage

was intentionally destroyed. Rather, the destruction of this evidence is more fairly characterized as inadvertent, or, at worst, negligent. The prison officials believed that the footage was, in fact, being retained during the system upgrade and that nothing was being lost by wiping the remaining hard drives. Unfortunately, the wrong hard drives were erased. Nevertheless, "[m]ere negligence" does not rise to the level of bad faith, let alone "non-negligent inadvertence." *Matthews*, 373 F. App'x at 390; *Thompson*, 584 F. App'x at 104. Therefore, Quinn's challenge under *Youngblood* fails.

IV.

For these reasons, it is **ORDERED** that the defendant's Amended Motion to Dismiss the Indictment, ECF No. 69, is DENIED.

ENTER: December 2, 2021

/s/  JAMES P. JONES
Senior United States District Judge